UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| LAURA E. TARTARO-MCGOWAN **Plaintiff,** v. INOVA HOME HEALTH, LLC & ALTERNATE SOLUTIONS HEALTH NETWORK, LLC **Defendants.** | Civil Action No. 1:21-cv-00298  COMPLAINT & JURY DEMAND |

## COMPLAINT

Plaintiff, Laura E. Tartaro-McGowan, by and through her undersigned counsel, states as follows:

### NATURE OF THE CASE

1. Laura E. Tartaro-McGowan ("Plaintiff") brings this action to recover damages for the denial of a reasonable accommodation, disability discrimination, and retaliation related to her request for a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"), and for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

2. Plaintiff, a Registered Nurse, had worked in the Inova Health Care system for nearly 40 years, 17 years of which she served as a field nurse. After two knee surgeries left her disabled, Plaintiff sought and obtained a desk job as a Clinical Manager. Defendants Inova Home Health, LLC ("Inova") and Alternate Solutions Health Network ("ASHN")

(collectively "Defendants") abruptly changed Plaintiff's job duties in response to alleged nursing shortages.   Plaintiff sought a reasonable accommodation related to her disability, but Defendants refused her request, failed to participate in any interactive process, denied Plaintiff any reasonable accommodation, and eventually fired her.

### JURISDICTION & VENUE

3. This Court maintains federal question jurisdiction over this action pursuant to the ADA, 42 U.S.C. § 12117(a), the ADEA, 29 U.S.C. §§ 621 *et seq.*, and 28 U.S.C. § 1331.

4. Venue is proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) and 29 U.S.C. § 626(c) because the unlawful employment practices are alleged to have occurred in Virginia.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. The Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC" or "Commission") on July 24, 2020.

6. Following an investigation, the EEOC issued a Dismissal and Notice of Rights on December 14, 2020.

7. Therefore, Plaintiff has exhausted her administrative remedies.

8. In accordance with 29 U.S.C. § 626(d), Plaintiff timely files this civil action within 90 days of receipt of the EEOC's dismissal.

### PARTIES

9. Plaintiff is a resident of Arlington, Virginia. During the relevant time, Plaintiff was Defendants' employee within the meaning of the ADA, 42 U.S.C. § 12111(4), and the ADEA, 29 U.S.C. § 630(f).

10. Defendant Inova Home Health, LLC ("Inova"), located at 9900 Main Street, Fairfax, VA 22031, is a home health agency partner with Inova Healthcare System ("IHS").  Inova was

created in a joint venture between IHS and Alternate Solutions Health Network ("ASHN") in September 2018.

11. Upon information and belief, Defendant Alternate Solutions Health Network, LLC ("ASHN"), an Ohio corporation located at 1050 Forrer Boulevard, Kettering, OH 45420, is a post-acute home healthcare entity, providing nursing, therapy, and other clinical care to patients in their homes through its agency partnerships with hospitals, including IHS. ASHN operates Inova in conjunction with IHS.

12. Defendants jointly employed Plaintiff from September 5, 2018 until her termination on June 24, 2020. Defendants were Plaintiff's employers during the relevant time within the meaning of the ADA, 42 U.S.C. § 12111(5), and the ADEA, 29 U.S.C. § 630(b).

## FACTUAL ALLEGATIONS

13. Plaintiff is a Registered Nurse (RN, BSN).

14. Plaintiff worked for IHS in Alexandria and Fairfax, Virginia for nearly 40 years. She saw patients in the field for 17 of those years.

15. In 2016 and 2017 she had two total knee replacement surgeries.

16. Plaintiff is a disabled person within the meaning of the ADA because as a result of her surgeries, she suffers from a physical impairment (chronic arthritis) and this condition substantially limits her major life activities of squatting, kneeling, and bending her knees.

17. As a result of her disability, Plaintiff was no longer able to safely treat patients in the field.

*Plaintiff becomes a Clinical Manager, an in-office position.*

18. In or around July 2017, Plaintiff applied to be a Clinical Manager, an in-office position, that would allow her to continue supporting patients and their caregivers, without jeopardizing her own health or the safety of her patients.

19. IHS hired Plaintiff to be Clinical Manager and Plaintiff started in that role in August 2017.

*IHS enters into a joint venture with ASHN.*

20. In September 2018, IHS entered into a joint venture with ASHN (51% owned by IHS and 49% owned by ASHN). The joint venture is called Inova Home Health, LLC ("Inova").

21. As a result, Plaintiff became jointly employed by Inova and ASHN.

22. While on paper, Plaintiff was employed by Inova, ASHN exhibited substantial control over Inova and Plaintiff by maintaining management responsibilities over Inova and its employees.

23. For example, on information and belief, ASHN employees signed Plaintiff's paychecks, determined and delegated Inova employee duties, and ultimately made the decision to fire Plaintiff.

24. While the position, title, and job responsibilities with Defendants were a continuation of Plaintiff's previous responsibilities with IHS, Defendants' Clinical Manger position included a list of "Essential Functions," which had not been specifically enumerated by IHS.

25. The Clinical Manager position with Defendants had a job description that included the following "Essential Functions," listed in full:

- Arrives at assigned location on scheduled work day. Works according to designated hours and on-call as needed in office and field nursing responsibilities.
- Current applicable license as an RN. Knowledgeable with nursing best practices and the scope of practice for a nurse as outlined in Chapter 30 of Title 54.1 of the Code of Virginia for its licensed nursing personnel.
- Utilizes computer and phone continually to maintain constant contact with field staff, physicians, referral sources, internal staff and other departments.
- Knowledge of The Company billing, authorization, intake, CFSS & workflow processes.
- Performs assigned duties with use of computer and phone.
- Completes and submits all required documentation within specified company requirements.
- Dexterity & vision to complete documentation on computer.

26. The description's inclusion of the ambiguous phrase, "on-call as needed in office and field nursing responsibilities" concerned Plaintiff given her disability and her rationale for moving into the clinical manager position in the first place.

27. Plaintiff discussed her concerns regarding her disability and her ability to perform field visits with Defendants.

28. Specifically, Plaintiff discussed her concerns with Defendants' hiring representatives Jolita Wilbanks, VP Patient Services, and Billie Ellis, Senior Manager of Patient Services and Supervising Registered Nurse.

29. Plaintiff sought assurances that she would not be required to go into the field to perform primary patient care activities.

30. Mss. Wilbanks and Ellis explicitly confirmed Plaintiff would not be required to go into the field to provide direct patient care, although she may need to go into the field to provide other supervisory-type functions.

31. Plaintiff relied on the assurances from Mss. Wilbanks and Ellis in determining to remain employed by Defendants as a Clinical Manager.

*Defendants notify Plaintiff that she will have to treat patients in the field.*

32. Plaintiff continued to perform her job after the joint venture and received positive reviews from her supervisors.

33. In early May 2020, Defendants notified Plaintiff and her internal employee[1] colleagues that they would be required to see patients in the field. This was medically impossible for Plaintiff due to her disability.

---

[1] Employees are either internal or field employees.

34. Until this date, and consistent with Mss. Wilbanks and Ellis' assurances, Plaintiff had never been asked to provide direct patient care in the field as a Clinical Manager; however, she had gone into the field to supervise clinicians, provide service recovery, accompany surveyors and/or deliver supplies to patients/clinicians. She continued to be able and willing to perform these functions in the field.

<em><u>Plaintiff requests a reasonable accommodation.</u></em>

35. On May 13, 2020, in response to Defendants' notice regarding field visits, Plaintiff requested a reasonable accommodation based on her disability, and provided a letter from her physician stating the following:

    > [Plaintiff] has chronic arthritic issues involving her knees which do not allow her to squat or get very low. This is often required when treating patients at home, and she is unable to do this. I would therefore respectfully request that she be employed in a different capacity which will not require her to bend her knees or otherwise put stress on her lower extremities.

36. On May 15, 2020, Joan VanZant, Director of Human Resources, ASHN, replied stating that Plaintiff would be allowed to screen her patients and select which field visits would allow her to avoid squatting, kneeling, and bending at the knees, per her doctor's letter. This was not a unique offer and was available to all internal office staff who were then being asked to go into the field.

37. Defendants' proposed solution was inadequate and unrealistic. If something were to happen during the appointment to the patient or Plaintiff, she would be unable to adequately respond.

38. For example, if the patient fell during a visit, Plaintiff would be helpless to assist the patient given her disability. Such a fall, or any other similar accident, would not be considered in a pre-visit screening call. Thus, Defendants' proposal would place Plaintiff and the patients at great risk.

39. On May 27, 2020, Defendants posted Plaintiff's Clinical Manager position on the internet.

40. On May 30, 2020, Plaintiff's physician provided a second letter stating that the suggestion that Plaintiff screen patients was not a "reasonable solution," because a patient's full needs:

    can never be truly determined until she is at the home doing a proper nursing assessment. Once in the home, she would have a professional obligation to address the patient's needs and she may not be able to do that adequately because of her arthritic issues.

41. Defendants never responded to Plaintiff's concerns or her physician's letters and continued to insist that she see patients in the field.

42. Based on Defendants' job posting for Plaintiff's job and Defendant's refusal to respond to Plaintiff's doctor's concerns, Defendant never intended to provide Plaintiff with an accommodation and never actually engaged in an interactive process with Plaintiff.

43. On June 12, 2020, Kathleen Nesterick, Inova Field Administrator, asserted that, "field visits" have always been part of the clinical manager description and an essential job function." This is untrue based on Plaintiff's almost three years in the position – including 1 year and 9 months after the joint venture and her discussion of the position description with Mss. Wilbanks and Ellis.

44. Although Defendants have claimed that they did not have a sufficient number of trained staff to treat patients in the field, this is false and pretext because, on information and belief, there were a sufficient number of employees who were trained and who were physically healthy enough to take on the in-field patient responsibilities.

45. On June 22, 2020, Plaintiff received an email from Ms. Nesterick notifying Plaintiff that, "If you decide not [sic] go into the field, then this will be considered job abandonment, and you will no longer be employed by Inova Home Health effective June 24th."

46. On June 24, 2020, Plaintiff was assigned a patient to see in the field. This patient required 2-

4 layers of profore wraps for each lower extremity, which would have required Plaintiff to bend, stoop, and possibly get near to the ground in order to provide care.

47. However, this particular patient asked that his appointment be rescheduled for June 26, 2020. Plaintiff noted this request in the record according to protocol.

*Defendants terminate Plaintiff's employment.*

48. On June 25, 2020, Defendants notified Plaintiff that she had been fired effective June 24, 2020 – based on Plaintiff's refusal to perform the field visit on June 24, 2020.

49. This rationale was pretextual because as of that date Plaintiff had not refused to see any patients in the field as the patient had rescheduled the appointment to June 26, 2020.

50. On information and belief, shortly after Plaintiff was fired, Defendants removed the requirement that internal staff perform field visits.

51. At the time of her termination, Plaintiff was 62 years old. As such, she was the oldest person employed by Defendants.

52. Also, on June 24, 2020, Defendants fired the second-oldest employee.

53. On information and belief, at least two other internal employees, who were significantly younger than Plaintiff, had not yet made any field visits as of Plaintiff's termination. On information and belief, these employees have not been disciplined.

**COUNT I – Denial of Reasonable Accommodation**
(ADA – 42 U.S.C. § 12101 *et seq.*)

54. Plaintiff repeats and realleges the allegations set forth above.

55. By and through their conduct, Defendants violated the ADA by failing to provide reasonable accommodations for Plaintiff and failing to engage in an interactive process to identify suitable reasonable accommodations.

56. Defendants' actions were intentional, reckless, and taken with malice.

57. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered significant damages, including but not limited to, pain and suffering, emotional distress, lost wages (back pay and front pay), and other damages.

## COUNT II – Discrimination Based on Disability
(ADA – 42 U.S.C. § 12101 *et seq.*)

58. Plaintiff repeats and realleges the allegations set forth above.

59. By and through their conduct, Defendants violated the ADA by terminating Plaintiff's employment due to her disability, her record of disability, and/or their perception of Plaintiff as disabled.

60. Defendants' actions were intentional, reckless, and taken with malice.

61. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered significant damages, including but not limited to, pain and suffering, emotional distress, lost wages (back pay and front pay), and other damages.

## COUNT III – Retaliation for Protected Activity
(ADA – 42 U.S.C. § 12101 *et seq.*)

62. Plaintiff repeats and realleges the allegations set forth above.

63. By and through their conduct, Defendants violated the ADA by terminating Plaintiff's employment in retaliation for requesting a reasonable accommodation.

64. Defendants' actions were intentional, reckless, and taken with malice.

65. As a direct and proximate result of the Agency's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered significant damages, including but not limited to, pain and

suffering, emotional distress, lost wages (back and front pay), and other damages.

### COUNT IV – Discrimination Based on Age
(ADEA – 29 U.S.C. § 621 *et seq.*)

66. Plaintiff repeats and realleges the allegations set forth above.

67. Defendants violated the ADEA by terminating Plaintiff's employment based on her age (62).

68. As a direct and proximate result of Inova's unlawful and discriminatory conduct in violation of the ADEA, Plaintiff has suffered significant damages, including but not limited to, lost wages (back and front pay), and other damages.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

### PRAYER FOR RELIEF

Plaintiff respectfully requests this Court enter judgment against Defendants on all Counts, and award damages as follows:

a. **On Counts 1-3**, award Plaintiff lost wages, including front and back pay, and benefits; compensatory damages for pain and suffering, mental anguish, and emotional distress in the amount of $300,000, or any such amount as is determined by a jury; punitive damages; pre- and post-judgment interest on the amount of any award; the tax on any award; attorneys' fees and litigation costs;

b. **On Count 4**, award Plaintiff lost wages, including front and back pay, and benefits; pre- and post-judgment interest on the amount of any award; the tax on any award; attorneys' fees and litigation costs;

c. Any such other relief as the Court deems just and proper.

Date: March 10, 2021                               Respectfully submitted,

                                                /s/ Timothy M. Belknap
Timothy M. Belknap
VA Bar No. 81856
Alan Lescht & Associates, PC
1825 K Street NW, Suite 750
Washington, DC 20006
Tel. (202) 539-8157
Fax. (202) 463-6067
timothy.belknap@leschtlaw.com

Counsel for Plaintiff